Affirmed and Memorandum Opinion filed February 8, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00936-CR

___________________

 

Elonda Javette Calhoun, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 337th District Court

Harris County,
Texas



Trial Court Cause No. 1177242

 



 

 

MEMORANDUM OPINION

            A jury found appellant, Elonda Javette Calhoun, guilty
of impersonating a public servant.  Appellant pleaded true to two enhancement
paragraphs in the indictment, the jury assessed punishment at twenty-six years’
confinement, and the trial court sentenced appellant accordingly.  In four
issues, appellant challenges the legal and factual sufficiency of the evidence
and alleges error in the indictment and jury instruction.  We affirm.

I.  Factual
Background

Appellant and Keisha
Cobb worked in the same building in the past and were friends.  One night,
appellant called Cobb to get something to eat with her.  Cobb met appellant in
a parking lot and left with her in a rental car.  Instead of driving to a
restaurant, appellant told Cobb they were “going to make big bucks” and to “just
follow [her] lead.”  Cobb observed two hats in the back of the car—one with “Sheriff” written on it; and the other, with
“FBI.”  Cobb also saw handcuffs and gloves in the backseat.

The same evening, Arturo
Vasquez and three other men had left a flea market in Vasquez’s truck and were
entering the parking lot of an apartment complex.  Appellant followed them and flashed
her bright lights towards the truck.  Appellant told Cobb to approach the passenger
side of the truck and tell the men to step out and empty their pockets onto the
hood of the truck.  According to both Vasquez and Cobb, appellant wore a “Sheriff”
hat and Cobb wore an “FBI” hat.  Both women also had badges.  Appellant
approached the driver side of the truck while Cobb approached the passenger
side.  As appellant shined a flashlight on Vasquez, he noticed she had
handcuffs with her.  Both women told the men to get out of the truck and place
the contents of their pockets on the hood of the truck. After the men complied,
appellant told them to get back into the truck. When the men saw appellant and
Cobb take the items off the hood and put them in their pockets, the men
realized they were being robbed.

After struggling with
the men, appellant called 911 and reported that she and Cobb were robbed.  When
an officer arrived, the women told him a group of Hispanic men tried to rob
them.  The men, however, told the officer the women tried to rob them.  The
officer located an “FBI” hat, handcuffs, a silver badge, and gloves in the back
of appellant’s rental car, and a “Sheriff” hat several feet away from the
rental car.  Appellant had $320 in cash that the officer believed belonged to
one of the men (not Vasquez), who reported that exact amount had been taken by
the women.

Appellant was indicted
for “intentionally impersonat[ing] a public servant, namely, a peace officer,
FROM THE FEDERAL BUREAU OF INVESTIGATIONS, with intent to induce ARTURO VASQUEZ
to submit to his [sic] pretended official authority and to rely on his [sic] pretended
official acts, by DETAINING ARTURO VASQUEZ AND REMOVING PROPERTY FROM HIS
PERSON.”  Appellant did not move to quash the indictment. The State
subsequently amended the indictment and deleted the reference to removal of
property from Vazquez’s person.

Appellant pleaded not
guilty, and trial was to a jury.  In addition to Vasquez, the following
witnesses testified for the State:  Teofilo Perez, the Houston police officer
who was dispatched to the scene; and Keisha Cobb.  Vasquez and Cobb testified appellant
was wearing the “Sheriff” hat.

At the close of the
State’s case, appellant moved for a directed verdict, arguing that “according
to the indictment, the State failed to prove through any of their witnesses
that Ms. Calhoun impersonated a police officer when she said she was from the
Federal Bureau of Investigations.”  Appellant also referred to Vasquez’s
negative response when cross-examined about whether appellant ever told him she
was from the FBI.  Finally, appellant argued that the testimony established
only that appellant was wearing a hat that said “Sheriff,” and the State
“specifically named an agency that says ‘Federal Bureau of Investigations.’ 
Therefore, they have failed to prove the elements of this crime.”  The court
denied the motion, stating the law of parties “covers that.”

Appellant called Perez
and Richard White, an officer on probation who was riding with Perez.  White’s
testimony conflicted with Perez’s with regard to the number of officers at the
scene and whether the police had their own interpreter.

The trial court’s jury
charge contained the following instructions relevant to our disposition:

            The defendant, Elonda Javette Calhoun, stands
charged by indictment with the offense of impersonating a public servant. . . .

            Our law provides that a person commits an
offense if she impersonates a public servant with intent to induce another to
submit to her pretended official authority or to rely on her pretended official
acts.  A peace officer is a public servant.

            “Public servant” means a person elected,
selected, appointed, employed, or otherwise designated as an officer, employee,
or agent of government, even if she has not yet qualified for office or assumed
her duties and includes an officer, employee, or agent of government.

            “Peace Officer” means a person elected,
employed or appointed as a peace officer under Article 2.12, Code of Criminal
Procedure, Section 51.212 or 51.214, Education Code, or other law, and includes
sheriffs and their deputies, constables and their deputies, and marshals or
police officers of an incorporated city, town, or village.

            . . .

            All persons are parties to an offense who are
guilty of acting together in the commission of the offense. A person is
criminally responsible as a party to an offense if the offense is committed by
her own conduct, by the conduct of another for which she is criminally
responsible, or by both.

            A person is criminally responsible for an
offense committed by the conduct of another if, acting with intent to promote
or assist the commission of the offense, she solicits, encourages, directs,
aids, or attempts to aid the other person to commit the offense.  Mere presence
alone will not constitute one a party to an offense.

            Now, if you find from the evidence beyond a
reasonable doubt that in Harris County, Texas, the defendant, Elonda Javette
Calhoun, heretofore on or about the 2nd day of August, 2008, did then and there
unlawfully, intentionally impersonate a public servant, namely, a peace
officer, from the Federal Bureau of Investigations, with intent to induce
Arturo Vasquez to submit to her pretended official authority or to rely on her
pretended official acts, by detaining Arturo Vasquez; or if you find from the
evidence beyond a reasonable doubt that in Harris County, Texas, Keisha Cobb,
heretofore on or about the 2nd day of August, 2008, did then and there
unlawfully, intentionally impersonate a public servant, namely, a peace
officer, from the Federal Bureau of Investigations, with intent to induce
Arturo Vasquez to submit to her pretended official authority or to rely on her
pretended official acts, by detaining Arturo Vasquez and that the defendant,
Elonda Javette Calhoun, with the intent to promote or assist the commission of
the offense, if any, solicited, encouraged, directed, aided or attempted to aid
Keisha Cobb to commit the offense, if she did, then you will find the defendant
guilty of impersonating a public servant, as charged in the indictment.

Neither party objected to the
jury charge.

            The jury found
appellant guilty of impersonating a public servant as charged in the indictment
and assessed punishment at twenty-six years’ confinement.  The trial court
entered judgment accordingly, and appellant filed a motion for new trial, which
was overruled by operation of law.

II.  Analysis

            Appellant
raises four issues.  In issues one and two, respectively, she argues the
evidence was legally and factually insufficient to sustain her conviction for
impersonating a public servant.  In issue three, she argues the indictment was
fundamentally defective because it failed to allege an offense.  In issue four,
she contends the jury charge was fundamentally defective and authorized the
jury to convict her of a non-existent offense.  A single theme runs throughout
appellant’s brief—by statute an FBI agent is not a “peace officer” and
appellant was therefore charged with, and convicted of, a non-existent offense.

            We begin with a
description of the statute that defines the charged offense and the premises
and statutes on which appellant relies.  

A.  Impersonating a Public Servant

A person commits the charged offense if she “impersonates
a public servant with intent to induce another to submit to [her] pretended
official authority or to rely on [her] pretended official acts . . . .”  Tex. Penal
Code Ann. § 37.11(a)(1) (West 2003).  “‘Public servant’ means a person elected,
selected, appointed, employed, or otherwise designated as one of the following,
even if he has not yet qualified for office or assumed his duties . . . an
officer, employee, or agent of government . . . .”  Id. § 1.07(a)(41)(A)
(West Supp. 2009).  “‘Government’ means:  (A) the state; (B) a county,
municipality, or political subdivision of the state; or (C) any branch or
agency of the state, a county, municipality, or political subdivision.”  Id.
§ (a)(24).

Appellant’s first, third and fourth issues rest on the
indictment’s description of the public servant appellant allegedly
impersonated, i.e., a “peace officer, from the Federal Bureau of
Investigations.”  Appellant contends impersonating an FBI agent does not
constitute the offense of impersonating a public servant.  In support,
appellant relies on Penal Code section 1.07(a)(36) and Code of Criminal
Procedure articles 2.12 and 2.122.

Section 1.07(a)(36) defines “peace officer” as “a
person elected, employed, or appointed as a peace officer under Article 2.12,
Code of Criminal Procedure, Section 51.212 or 51.214, Education Code, or other
law.”  Tex. Penal Code Ann. § 1.07(a)(36).  Code of Criminal Procedure Article
2.12 lists thirty-six categories of “peace officer,” and FBI agents are not
among them.  Tex. Code Crim. Proc. Ann. art. 2.12 (West Supp. 2009).  Article
2.122 provides in relevant part:  “The following named criminal investigators
of the United States shall not be deemed peace officers, but shall have the
powers of arrest, search and seizure as to felony offenses only under the laws
of the State of Texas . . . Special Agents of the Federal Bureau of
Investigation . . . .”  Id. art. 2.122(a)(1).

Appellant’s argument thus rests on the premise she
was charged with impersonating a peace officer.  The offense with which
appellant was charged, however, was impersonating a public servant.  See
Tex. Penal Code Ann. § 37.11(a)(1).  Although the predecessor to current
section 37.11 separately referred to impersonating a “peace officer” and
increased the penalty for such conduct, the legislature deleted that provision
in 1997.  See Act of May 10, 1997, 75th Leg. R.S., ch. 189, § 7, 1997
Tex. Gen. Laws 1045, 1048.  Section 37.11 currently does not contain the term
“peace officer.”  For this reason alone, the definitions of “peace officer” in
Code of Criminal Procedure articles 2.12 and 2.122 are arguably not relevant to
an interpretation of current section 37.11.

Additionally, the definitions in articles 2.12 and 2.122
are contained in the Code of Criminal Procedure Title 1, Chapter 2, which prescribes
the general duties of officers.  References to the definitions in article 2.12
occur in statutes that prescribe the powers, duties, or privileges of peace
officers in specific contexts.  See, e.g., Tex. Educ. Code Ann. §
25.091(a), (b-1), (c)(2) (Supp. 2009); Tex. Gov’t Code Ann. §§ 615.103 (a)(2)
& (b), 661.918 (a) &(b) (West 2004 & Supp. 2009); Tex. Parks &
Wild. Code Ann. § 61.201(e) (West 2002).  Thus, the definitions in articles
2.12 and 2.122 relate to the realm of actual—not “pretended”—powers, duties,
and privileges.  Section 37.11, in contrast, refers to “pretended” official
authority and acts.  See Tex. Penal Code Ann. § 37.11(a)(1).

Finally, the general purpose of section 37.11 is to
protect the public from being “placed at risk of submitting to the pretended
authority of an individual impersonating an agent of a ‘governmental unit’ . .
. .”  Rice v. State, 195 S.W.3d 876, 881 (Tex. App.—Dallas 2006, pet.
ref’d).  Given this purpose, the Rice court rejected a defendant’s
argument that section 37.11 applied only when a person represented he was an
official of the State of Texas, as opposed to representing himself as an
official of the State of Louisiana, a fact he conceded.  Id.  The court
cited the definition of “public servant,” which included an “agent of
government,” and the definition of government, which included “the state.”  Id. 
The court then reasoned:

            The penal code does not define the phrase “the
state”; therefore, we interpret this statute by seeking “to effectuate the
‘collective’ intent or purpose of the legislators who enacted the
legislation.”  Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App.
1991).  If the “meaning of the statutory text, when read using the established
canons of construction relating to such text, should have been plain to the
legislators who voted on it, we ordinarily give effect to that plain meaning.” 
Boykin, 818 S.W.2d at 785.  In other words, we “interpret a statute in
accordance with the plain meaning of its language unless the language is
ambiguous or the plain meaning leads to absurd results.”  Jordan v. State,
36 S.W.3d 871, 873 (Tex. Crim. App. 2001).  “State” is defined as “a body
politic organized for civil rule and government,” a “political organization
that has supreme civil authority and political power and serves as the basis of
government,” or “any of the bodies politic or political units that together
make up a federal union, as in the United States of America.”  See
WEBSTER’S COLLEGE DICTIONARY 1306 (1991); WEBSTER’S 3D NEW INT’L DICTIONARY
2228 (1981).  Thus, a person commits an offense if he impersonates an officer,
employee, or agent of a political body, organization, or unit organized for civil
rule and government.  See TEX. PEN.CODE ANN. §§ 1.07(a)(24)(A), (41)(A),
37.11(a)(1).

Id.

            Similar reasoning
would allow the definition of “state” to include the federal government.  Thus,
even if an FBI agent is not a “peace officer,” an FBI agent may be considered a
“public servant.”

B.  The Issues

            1.  Allegedly
defective indictment.  

In issue three, appellant contends the indictment was
fundamentally defective because special agents of the FBI are not peace
officers and the indictment therefore failed to set forth an offense.  As set
forth above, the charging instrument alleged (1) appellant (2) committed the
offense of impersonating a public servant.  It therefore met the constitutional
definition of an indictment.  See Cook v. State, 902 S.W.2d 471, 477
(Tex. Crim. App. 1995) (“[T]o comprise an indictment within the definition
provided by the constitution, an instrument must charge: (1) a person; (2) with
the commission of an offense.”).

            Appellant did not
move to quash the indictment.  She has therefore forfeited her argument that
the indictment failed to allege an offense.  McCoy v. State, 932 S.W.2d
720, 724 (Tex. App.—Fort Worth 1996, pet. ref’d); see Teal v. State, 230
S.W.3d 172, 182 (Tex. Crim. App. 2003) (holding defendant, by waiting to object
until after jury empanelled, forfeited right to object to indictment that
failed to set forth mens rea element).

            We overrule
appellant’s third issue.

            2.  Allegedly
defective jury charge.  

In issue four, appellant contends the jury charge
“was fundamentally defective and authorized the jury to convict appellant of a
non-existent offense.”  Appellant’s complaint appears to rest on the inclusion
of (1) the sentence stating, “A peace officer is a public servant[,]” (2)
inclusion of the definition of “peace officer,” and (3) the portion of the
application paragraph instructing the jury it could find appellant guilty if it
found appellant or Cobb “intentionally impersonate[d] a public servant, namely,
a peace officer, from the Federal Bureau of Investigations . . . .”

Appellant affirmatively stated she had no objection
to the jury charge.  Therefore, error, if any, does not require reversal unless
it was so egregious and created such harm that appellant was denied a fair
trial.  Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984), overruled
on other grounds by Rodriguez v. State, 758 S.W.2d 787 (Tex. Crim. App.
1988).  First, we must determine whether the jury charge was erroneous.  Hutch
v. State, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996).  If it was, then we
must determine whether the error in the charge resulted in egregious harm.  Id.
at 170–71.  In the instant case, we will assume, without deciding, that the
equation of a peace officer with an FBI agent was error.

In examining the record for egregious harm, we
consider the entire jury charge, the state of the evidence, the final arguments
of the parties, and any other relevant information revealed by the record of
the trial as a whole.  Olivas v. State, 202 S.W.3d 137, 144 (Tex. Crim.
App. 2006).  “Jury charge error is egregiously harmful if it affects the very
basis of the case, deprives the defendant of a valuable right, or vitally
affects a defensive theory.” Stuhler v. State, 218 S.W.3d 706, 719 (Tex.
Crim. App. 2007).

The entire jury charge.  The abstract
portion of the charge correctly set forth the offense (“impersonating a public
servant”) and the elements (“impersonating a public servant with intent to
induce another to submit to her pretended official authority or to rely on her
pretended official acts”).  It correctly stated that a peace officer is a
public servant.  It correctly set forth the statutory definitions of “public
servant” and “peace officer.”  The definition of “public servant” provided, in
part, “‘Public servant’ . . . includes an officer, employee, or agent of
government.”  Finally, it correctly set forth the law of parties.  Thus, if
there were error in the jury charge, that error lay only in a single phrase in the
application paragraph equating a peace officer with someone from the Bureau of
Investigation.[1] 
Absent that equation, the application paragraph would have asked the jury to
find appellant guilty if she did “unlawfully, intentionally impersonate a public
servant, namely, an agent from the Federal Bureau of Investigation,[2] with intent to
induce Arturo Vasquez to submit to her pretended official authority or to rely
on her pretended official acts, by detaining Arturo Vasquez.”

In sum, the charge error, if any, occurred in a
single phrase (repeated in relation to the law of parties) in the application
paragraph.  The abstract portion of the jury instruction correctly and
completely set forth the charged offense, the statutory elements, and the
relevant definitions.

The state of the evidence.  As
described more fully below, the evidence established that appellant and Cobb,
equipped with badges, handcuffs, and hats indicating “Sheriff” and “FBI,”
detained Vasquez and successfully demanded that he and his passengers put the
contents of their pockets on the hood of Vasquez’s truck.  It was only when
Vasquez and the others saw appellant and Cobb taking the items from the hood
and putting them in their own pockets that the men realized they were being
robbed.

The final arguments of the parties.  Appellant
did not testify at trial.  Her defense consisted of eliciting inconsistencies
in the State’s witnesses’ testimony, referring to deficiencies in the
investigation and the limited number of testifying witnesses given the number
of people at the scene, and implying Cobb was lying to gain favor with the
prosecution or for other motives.

Other relevant information.  Finally, two
aspects of the record of the trial as a whole are noteworthy.  First, appellant’s
complaint about the jury charge is essentially the same as her complaint about
the indictment, yet she never moved to quash the indictment.  Second, although appellant
moved for a directed verdict at the close of the State’s case, she argued the
State failed to prove she was the person wearing the FBI hat; she did not argue
an FBI agent was not a public servant.

Considering the entire jury charge, the state of the
evidence, the final arguments of the parties, and the record of the trial as a
whole, we conclude appellant has not shown egregious harm.  Accordingly, even
if there were error in the charge, it is not grounds for reversal.

We overrule appellant’s fourth issue.

3.  Sufficiency of the evidence.[3]  

In issues one and two, appellant challenges the legal
and factual sufficiency of the evidence.  While this appeal was pending, five
judges on the Texas Court of Criminal Appeals held that only one standard
should be employed to evaluate whether the evidence is sufficient to support a
criminal conviction beyond a reasonable doubt: legal sufficiency.  See Brooks v. State, 323 S.W.3d 893, 894–95 (Tex. Crim. App.
2010) (plurality op.); id. at 926 (Cochran, J., concurring).
 Accordingly, we review appellant's challenge to factual sufficiency of
the evidence under the legal-sufficiency standard.  See Pomier v. State,
326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (applying
single standard of review required by Brooks); see also Caddell v.
State, 123 S.W.3d 722, 726–27 (Tex. App.—Houston [14th Dist.] 2003, pet.
ref’d) (explaining that this court is bound to follow its own precedent).

When reviewing sufficiency of the evidence, we view
all the evidence in the light most favorable to the verdict to determine
whether the jury was rationally justified in finding guilt beyond a reasonable
doubt.  Brooks, 323 S.W.3d at 899 (plurality op.). Following the
admonitions of the Court of Criminal Appeals in Brooks, we may not sit
as a thirteenth juror and substitute our judgment for that of the fact finder
by reevaluating the weight and credibility of the evidence.  See id. at
899, 901; Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); see
also Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (expressing
that jury may choose to believe or disbelieve any portion of the testimony).  We
defer to the fact finder’s resolution of conflicting evidence unless the
resolution is not rational.  See Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).  Our duty as a reviewing court is to ensure the
evidence presented actually supports a conclusion that the defendant committed
the charged crime.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App.
2007).

The gravamen of appellant’s legal sufficiency
complaint is that the State did not prove she impersonated a “peace officer.”  As
discussed above, however, section 37.11(a)(1) does not require the State to
prove appellant impersonated a peace officer.  Instead, section 37.11(a)(1)
requires the State to prove only that appellant (1) impersonated a public
servant (2) with intent to induce another to submit to her pretended official
authority or to rely on her pretended official acts.  Tex. Penal Code Ann. §
37.11(a)(1).  Additionally, as discussed above, we have concluded a “public
servant” includes an agent of the federal government.  The evidence was sufficient
to establish appellant impersonated a public servant either as a principal or a
party.

Cobb testified appellant drove to an apartment
complex where she “proceeded to pull over . . . a truck” by flashing her bright
lights.  Appellant told Cobb to follow appellant’s lead, to do exactly what
appellant did.  Appellant was wearing a “Sheriff” hat; and Cobb, an “FBI” hat. 
Both appellant and Cobb had badges.

Vasquez testified appellant and another woman came up
behind his truck and told him they were police officers.[4]  The women were
dressed like police officers, with caps, shirts, and badges.  Appellant had
handcuffs and a flashlight, which she shined on Vasquez.  Appellant told
Vasquez he had run a red light, asked for identification, and asked the men to
exit the truck and place their belongings on the truck.  The men did so.  Vasquez
initially believed appellant was a real police officer.

Officers Perez and White found handcuffs, a silver
badge, a black “FBI” hat, and a black “Sheriff” hat at the scene.  Perez testified
the silver badge was similar to the one he wore as a police officer and agreed
it could possibly “fool” someone.

The evidence was sufficient to support appellant’s
conviction of impersonating a public servant.  Accordingly, we overrule
appellant’s first and second issues.

            We affirm the trial
court’s judgment.

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

Panel consists of Justices
Seymore, Boyce, and Christopher.

Do
Not Publish—Tex. R. App. P. 47.2(b).

 

 









[1] The phrase appeared twice
in the application paragraph, once referring to appellant and once (in relation
to the law of parties) referring to Cobb.





[2] See the discussion of Rice
v. State, 195 S.W.3d 876 (Tex. App.—Dallas 2006, pet. ref’d), above,
regarding the definition of “government” and “state.”





[3] In Smith v. State,
the Waco Court of Appeals refused to address a sufficiency-of-evidence point
when appellant was arguing simply that the State had failed to allege an
offense and appellant had not filed a motion to quash the indictment until the
trial date.  959 S.W.2d 1, 9 (Tex. App.—Waco 1997, pet. ref’d).





[4] Vasquez identified Cobb’s
photo as that of the other woman.